**MCRAE'S, INC.**

**v.**

**Syed HUSSAIN D/B/A CPIC Net**

**No. CIV. A. 3:99CV888LN.**

United States District Court,
S.D. Mississippi,
Jackson Division.

June 30, 2000.

---

Dennis L. Horn, Horn & Payne, PLLC, Madison, WI, Monida R. Parker, David J. Stewart, Alston & Bird, LLP, Atlanta, GA, for Plaintiff.

Stephen J. Carmody, Brunini, Grantham, Grower Hewes, Jackson, MS, Brett N. Dorny, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boxton, MA, for Defendant.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Syed Hussain d/b/a CPIC Net to dismiss for lack of personal jurisdiction and improper venue pursuant to Federal Rule of Civil Procedure 12(b)(2) and (3), respectively. Plaintiff McRae's, Inc. has responded in opposition to the motion and the court, having considered the memoranda of authorities submitted by the parties, concludes that defendant's motion should be denied.

1. In his response, Hussain states that Saks wrote a letter claiming to be the trademark owner. In the letter which he references, however, Saks does not claim to own the trademark but rather purports to represent the owner of the mark. The evidence presented by McRae's in response to the motion clearly indicates its ownership of the marks.

2. Hussain, through his "advisor," Kerri Krieger, advised that he "would consider transferring ownership of the above stated addresses when he learns of a reasonable offer," along the lines of "10% of the future revenue that these web addresses will generate in the first three years of operation." Krieger threatened that if no offer were received, Hussain might sell the names to anyone else who made a reasonable offer, and urged that an offer be made, stating, "In just two short weeks the address can be yours. Think of all that online shopping."

3. A comprehensive description of the problem of "cyberpiracy" is found in *Porsche Cars North America, Inc. v. Spencer*, No. Civ. S–00–471GEB PAN, 2000 WL 641209, at *4 n. 6 (E.D.Cal. May. 18, 2000), as follows:

McRae's, a Mississippi corporation with its principal place of business in Ridgeland, Mississippi, is the registered owner of the Carson Pirie Scott trademark. McRae's, a subsidiary of Saks, Inc., licenses the mark to Parisian, Inc., another Saks subsidiary, which uses the mark in connection with the identification of a department store chain in the Midwestern United States.[1]

In October 1999, upon learning that defendant Syed Hussain d/b/a CPIC Net had registered the Internet domain names "carsonpiriescott.com" and "carsonpiriescott.net", Saks, on behalf of McRae's, communicated to Hussain that his registration violated McRae's trademark. In a move characterized by McRae's as "cyberpiracy," Hussain responded by offering to sell to McRae's and/or Saks the "carsonpiriescott.com" and "carsonpiriescott.net" domain names.[2] His offers were refused, and McRae's thereafter filed the present action against Hussain alleging claims for trademark infringement, trademark dilution, unfair competition and related wrongs.[3]

"The Internet is a worldwide network of computers that enables various individuals and organizations to share information. The Internet allows computer users to access millions of web sites and web pages. A web page is a computer data file that can include names, words, messages, pictures, sounds, and links to other information. Every web page has its own web site, which is its address, similar to a telephone number or street address. Every web site on the Internet has an identifier called a 'domain name.' The domain name often consists of a person's name or a company's name or trademark." *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1318 (9th Cir.1998). Each domain name is unique. *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 493 (2d Cir.2000). Domain name registrars provide previously unregistered domain names on a first-come, first-served basis upon payment of a small registration fee. *OBH, Inc. v. Spotlight Magazine, Inc.*, 86 F.Supp.2d 176, 179–80 (W.D.N.Y.2000). However, "domain name registrars do not check to see whether a domain name request is related to existing trademarks." *Sporty's Farm*, 202 F.3d at 493. Thus, it is

Hussain, a New Jersey resident, has moved to dismiss McRae's complaint, asserting that since he has had no contact with this state in connection with the events giving rise to this action or otherwise, and since the events giving rise to McRae's claims did not occur in this forum as the domain names in question were not registered in this state and the websites are not maintained in Mississippi, then he is not subject to personal jurisdiction in Mississippi and Mississippi is not a proper venue for this action.

■ A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant "if: (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the fourteenth amendment to the United States Constitution." *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir.1997) (quoting *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir.1989)). Because Mississippi's long-arm statute is not coextensive with federal due process, the court is required to both analyze the scope of the reach of the statute itself in addition to evaluation whether the requirements of due process are met. *Id.*

■ Under Mississippi's long-arm statute, a nonresident is amenable to service in this state if, *inter alia*, he committed a tort in whole or in part in this state.[4] In this case, McRae's submits that the injury from the torts of trademark infringement and trademark dilution alleged against Hussain[5] occurred in this state, as this is the location of McRae's principal place of business, and that the long-arm statute is thus satisfied.[6] Hussain, though, argues that in cases of alleged trademark infringement and dilution, the tort, including the element of injury, is deemed to have occurred in the state or states where the infringing activity occurred, and not merely where the economic consequences of the activity may ultimately be felt, and that consequently, the location of McRae's principal place of business is ultimately of no moment in the personal jurisdiction analysis.

---

4. Mississippi's long-arm statute, Miss.Code Ann. § 13-3-57, provides in relevant part:

   Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

5. *See Panavision, Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir.1998) (trademark dilution case is "akin to a tort case"); *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F.Supp.2d 824, 835 (N.D.Ill.2000) ("Infringement of intellectual property rights is a tort.").

6. In addition to contending that he committed a tort in Mississippi, McRae's also argues that Hussain was doing business in Mississippi and hence subject to jurisdiction under the "doing business" prong of the long-arm statute. The court does not consider McRae's arguments on that point to be particularly persuasive, but finds it unnecessary to reach the issue inasmuch as the court is amply satisfied that jurisdiction may properly be premised on the tort prong of the long-arm statute.

a relatively easy and inexpensive process for anyone to register domain names which include the trademarks of famous companies. *Id.* Some owners of domain names which incorporate a company's trademarks have attempted to sell those domain names at an exaggerated price, thereby engaging in what is commonly referred to as "cyberpiracy" or "cybersquatting." *Id.*; *Lucent Tech., Inc. v. Lucentsucks.Com*, 95 F.Supp.2d 528, 529 (E.D.Va.2000); *Northern Light Tech. v. Northern Lights Club*, 97 F.Supp.2d 96, 99–100 (D.Mass.2000) ("This problem has been further amplified by individuals who capitalize upon the issue, trying to 'scoop up' available Web sites that might later be in demand by large companies. These individuals have been termed 'cyber-squatters,' ... also known as 'cyberpira[tes]' ").

"Under the tort prong of the Mississippi long-arm statute, personal jurisdiction is proper if any element of the tort (or any part of any element) takes place in Mississippi," *Allred*, 117 F.3d at 282; and "[a]s the Mississippi Supreme Court has observed consistently: 'The tort is not complete until the injury occurs, and if the injury occurs in this State then, under the ... statute, the tort is committed, at least in part, in this State, and personam jurisdiction of the nonresident tort feasor is conferred upon the Mississippi court.' " *Id.* (quoting *Smith v. Temco,* 252 So.2d 212, 216 (Miss.1971)). With respect to where an injury occurs, the court in *Allred*, noted that its cases

> have been careful to distinguish actual injury from its resultant consequences. "[C]onsequences stemming from the actual tort injury do not confer personal jurisdiction at the site or sites where such consequences happen to occur." *Jobe [v. ATR Mktg., Inc.],* 87 F.3d [751,] at 753 & n. 2 [ (5th Cir.1996) ] (observing that "[t]he term 'injury' commonly denotes the invasion of any legally protected interest of another" whereas "the term 'damage' is understood to mean the harm, detriment or loss sustained by reason of an injury"); *see also Cycles,* 889 F.2d at 619 ("We have held that with respect to Mississippi's long-arm statute a tort occurs where and when the actual injury takes place, not at the place of the economic consequences of the injury."); *Rittenhouse [v. Mabry],* 832 F.2d [1380,] at 1384 [ (5th Cir.1987) ] (same); *Estate of Portnoy v. Cessna Aircraft Co.,* 730 F.2d 286, 290 (5th Cir.1984) (same).

*Allred*, 117 F.3d at 282.

The court recognizes that there are a number of cases which, as Hussain contends, have held that the determination of where the injury has occurred in a trademark infringement case is determined by where the infringement occurs, and not by where the trademark owner resides. *See, e.g., Amba Mktg. Systems, Inc. v. Jobar Int'l, Inc.,* 551 F.2d 784, 787–88 (9th Cir. 1977) (finding no personal jurisdiction in trademark infringement case where there was no evidence of allegedly infringing sales in the plaintiff's state); *Tefal, S.A. v. Products Int'l Co.,* 529 F.2d 495, 496 n. 1 (3d Cir.1976) (stating that "it is undisputed that a cause of action for trademark infringement arises where the passing off occurs"); *International Star Registry of Illinois v. Bowman–Haight Ventures, Inc.,* No. 98 C 6823, 1999 WL 300285 (N.D.Ill. May 16, 1999) (holding that "[i]ntellectual property infringement takes place in the state of the infringing sales, rather than the state of the owner's domicile for purposes of tort provisions of the Illinois long arm-statute."). In the court's opinion, however, the nature and/or manner of the alleged infringement in the case at bar is sufficiently unlike that in the cited cases to render them of much precedential value and warrants the conclusion that despite the absence of any sales or other such business activity by defendant in this state under the subject domain names, the location of the injury from defendant's infringing activities is necessarily where McRae's is located—and that place is Mississippi. More to the point, in this case, unlike the more typical infringement case involving sales of goods under allegedly infringing marks, defendant's purpose, as alleged by McRae's and suggested by the record,[7] was not to profit from sales by using McRae's trademarks *in sales of goods* but rather was to extort money from the owner of the marks, McRae's, by purposefully registering these domain names and then selling them to McRae's. In this scenario, the injury necessarily occurs where McRae's is located.[8]

---

7. "When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in the present case, however, the nonmoving party need only make a prima facie showing, and the court must accept as true the nonmover's allegations and resolve all factual disputes in its favor." *Guidry v. United States Tobacco Co., Inc.,* 188 F.3d 619, 625 (5th Cir.1999).

8. The court would note, too, that particularly given that under the licensing agreement between McRae's and Parisian, the amount of McRae's compensation for licensing the CAR-

Support for this conclusion is found in *Panavision International, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir.1998), which, like this case, involved allegations that the defendant had purposefully registered the plaintiff's trademarks as his domain names on the Internet to force the plaintiff to pay him money. *Id.* at 1321. There, a California company which owned the marks, Panavision and Panaflex, filed suit in California against an Illinois resident for trademark dilution. The defendant had registered the domain names panavision.com and panaflex.com and attempted to sell the domain names to Panavision. The court found that the defendant had satisfactorily manifested an intention to do business in California by attempting to extort money from the California owner. *Id.* at 1322. The court acknowledged that "simply registering someone else's trademark as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to a jurisdiction in another." *Id.* "[T]here must be 'something more' to demonstrate that the defendant directed his activity toward the forum state." *Id.* (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir.1997)). The court found that the requirement of "something more"

was satisfied because the defendant had "engaged in a scheme to register [plaintiff's] trademarks as his domain names for the purpose of extorting money from [plaintiff]." *Id.* "His conduct," the court wrote, "as he knew it likely would, had the effect of injuring Panavision in California where Panavision has its principal place of business," *id.*, and he therefore was subject to personal jurisdiction in California, *id.* See also *PurCo Fleet Servs., Inc. v. Towers*, 38 F.Supp.2d 1320, 1324 (D.Utah 1999) (defendant's registering of domain name to prevent usage by plaintiff and to extort money from plaintiff sustained personal jurisdiction). For these same reasons, this court concludes that the long-arm statute extends to cover Hussain's activities.[9]

■ "The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Mink v. AAAA Dev.*

SON SCOTT PIRIE mark is tied directly to the revenue derived from the licensee's use of the mark, the injury to McRae's occurs in Mississippi, where McRae's is located.

**9.** "Because the registration of domain names is not subject to regulatory control, cybersquatting has become increasingly familiar in recent years," *Porsche Cars North America, Inc. v. Spencer*, No. Civ. S–00–471GEB PAN, 2000 WL 641209, 2 (E.D.Cal. May. 18, 2000), Congress, on November 29, 1999, enacted the "Anticybersquatting Consumer Protection Act" (ACPA), Pub.L. No. 106–113, §§ 3001–3010, 113 Stat. 1537, 537–43 (1999), codified at 15 U.S.C. § 1125(d). Congress passed the Act "to protect consumers and American businesses, to promote the growth of online commerce, and to provide clarity in the law for trademark owners by prohibiting the bad-faith and abusive registration of distinctive marks as Internet domain names with the intent to profit from the goodwill associated with such marks—a practice commonly referred to as 'cybersquatting'." *See Porsche*, 2000 WL 641209, at *2 (citing *Sporty's Farm*,

202 F.3d at 495 (quoting and citing S.Rep. No. 106–140, at 4)). "The ACPA was intended to stop these cybersquatters 'who register numerous domain names containing American trademarks or tradenames only to hold them ransom in exchange for money.'" *Id.* (quoting *Northern Light Tech.*, 97 F.Supp.2d at 114–115 (quoting and citing H.R.Rep. No. 106–412, at 5)). The Act states, in pertinent part, as follows:

A person shall be liable in a civil action by the owner of a mark, . . . , if, without regard to the goods or services of the parties, that person—
(i) has a bad faith intent to profit from that mark, . . . ; and
(ii) registers, traffics in, or uses a domain name that

\*　\*　\*　\*　\*　\*

(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; . . .

*LLC,* 190 F.3d 333, 336 (5th Cir.1999). *See also Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 211 (5th Cir.1999) ("Obtaining personal jurisdiction over a non-resident of a state is constitutionally permissible" if the nonresident "purposefully availed himself of the benefits and protections" of [the forum state] by establishing "minimum contacts" with [the forum state] such that the defendant could "reasonably anticipate[ ] being haled into court in the forum state" and the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice.").

The "minimum contacts" aspect of the analysis can be established through "contacts that give rise to 'specific' personal jurisdiction or those that give rise to 'general' personal jurisdiction." *Wilson,* 20 F.3d at 647. Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *See id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are "continuous and systematic." *See id.* (*citing Helicopteros,* 466 U.S. at 414 n. 9, 104 S.Ct. 1868).

*Mink,* 190 F.3d at 336. McRae's makes no claim here that general jurisdiction would be appropriate, but rather limits its position to the assertion of specific jurisdiction.

The analysis of specific jurisdiction may be refined ... into a three-part test: (1) Did the defendant have minimum contacts with the forum state—purposely directing its activities toward the forum state or purposely availing itself of the privilege of conducting activities therein? (2) Did the plaintiffs [sic] cause of action arise out of or result from the defendant's forum-related contacts? (3) Would the exercise of personal jurisdiction be reasonable and fair? 4 Charles Alan Wright & Arthur R. Miller, *Feder-*

*al Practice and Procedure* § 1069, at 174 (Supp.1999) (citing authorities).

*Guidry,* 188 F.3d at 625.

In *Mink, supra,* the Fifth Circuit confronted the issue of exercising personal jurisdiction over a defendant "who operates an Internet website without other contacts with the forum state." *Mink,* 190 F.3d at 336. The court canvassed the jurisprudence touching on this issue, and summarized what it found as follows:

Courts addressing the issue of whether personal jurisdiction can be constitutionally exercised over a defendant look to the "nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997). The *Zippo* decision categorized Internet use into a spectrum of three areas. At the one end of the spectrum, there are situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states which "involve the knowing and repeated transmission of computer files over the Internet...." *Zippo,* 952 F.Supp. at 1124. In this situation, personal jurisdiction is proper. *See id.* (citing *CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996)). At the other end of the spectrum, there are situations where a defendant merely establishes a passive website that does nothing more than advertise on the Internet. With passive websites, personal jurisdiction is not appropriate. *See id.* (citing *Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295 (S.D.N.Y.1996), *aff'd,* 126 F.3d 25 (2d Cir.1997)). In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer. In this middle ground, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website." *Id.* (citing *Maritz, Inc. v.*

*Cybergold, Inc.*, 947 F.Supp. 1328 (E.D.Mo.1996)).

*Id.* at 336–37. The court found the reasoning of *Zippo* persuasive and adopted it for this circuit. *Id.* at 337.

█ In the case at bar, Hussain submits that jurisdiction cannot be exercised over him consistent with due process since, having had no contact with this state, he lacks the requisite minimum contacts. According to Hussain, the only possible contact he has had with Mississippi is the accessibility in Mississippi, as everywhere else in the world, of the "carsonpiriescott.net" and "carsonpiriescott.com" websites which, he argues, is not sufficient to support an exercise of jurisdiction. In fact, he likens his situation to one who merely operates a "passive" website, since his "carsonpiriescott.net" and "carsonpiriescott.com" websites state only that they are "under construction" and do not even so much as include business or sales information, much less represent an attempt by Hussain to conduct business via these Internet sites.

This is hardly an accurate characterization of Hussain's activities. Hussain did not merely establish a website, passive or otherwise. Rather, what he is alleged to have done is intentionally register McRae's trademarks as his domain names in order to extort money from McRae's. His activities were intentionally directed toward McRae's, a company located in Mississippi, since McRae's, as owner of the mark, was the only legitimate potential buyer of the mark. Hussain, then, clearly did "something more" than set up a passive website; he directed his activity toward Mississippi, and could thus reasonably anticipate being

haled into court here.[10] The court has no difficulty concluding that the requirement of purposeful availment is met. Likewise, it is manifest that McRae's claims in this case arise from defendant's forum state activities: the maintenance of an interactive web site and Internet sales of goods under marks which allegedly infringed plaintiff's trademarks.

"Once it has been decided that a defendant purposefully established such minimum contacts within the forum state, the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Guidry*, 188 F.3d at 630 (citations omitted). The court in *Guidry* explained that,

> [w]hen determining the fundamental fairness issue this court will normally examine (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Id.* In this case, defendant's due process arguments have focused solely on the purposeful availment/minimum contacts issue. He has not so much as addressed, much less made a "compelling case" that the court's exercise of jurisdiction would be unreasonable. The court, for its part, can conceive of no reason why jurisdiction could not be fairly and reasonably exerted over the defendant and thus will deny defendant's motion to dismiss.

---

10. *See also Guidry*, 188 F.3d at 628, where the court explained:

> When a nonresident defendant commits a tort within the state, or an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor and the

> causes of actions arising from its offenses or quasi-offenses. Even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct. *See Calder v. Jones*, 465 U.S. 783, 789–90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). (additional citations omitted).

Defendant has also moved to dismiss for improper venue arguing that since none of the events or acts relating to the complaint have occurred in this district, venue is not proper under 28 U.S.C. § 1391(b).[11] In response to defendant's motion on this point, McRae's argues that venue is proper not only under § 1391(b), but also under § 1391(d), which provides that "[a]n alien may be sued in any district." Since Hussain is a citizen of Pakistan, venue is proper in claims asserted against him in any judicial district in the United States, regardless of the fact that he has a residence in New Jersey.

Based on the foregoing, it is ordered that defendant's motion to dismiss is denied.

---

11. That section provides:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.