**IMPACT PRODUCTIONS, INC.,**
a Colorado corporation,
Plaintiff,

v.

**IMPACT PRODUCTIONS, LLC., a New Jersey limited liability corporation,**
Defendant.

**No. CIV.A. 02–K–783.**

United States District Court,
D. Colorado.

Oct. 19, 2004.

J. Mark Smith, Esq., Pendleton, Friedberg, Wilson & Hennessey, P.C., Denver, CO, for Plaintiff.

Mark W. Fischer, Esq., Faegre & Benson, LLP, Boulder, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is an action for trademark infringement brought by Plaintiff Impact Productions, Inc., a Colorado corporation ("Impact CO"), against Defendant Impact Productions, LLC, a New Jersey limited liability company with its principal place of business in New Jersey ("Impact NJ"). Impact NJ moved to dismiss for lack of personal jurisdiction and improper venue. After a period of discovery limited to the jurisdictional issue, the parties completed briefing on this motion. Upon careful consideration of the motion and the parties' memoranda, and all applicable legal authorities, and being fully advised in the premises, I grant the motion.

### Factual Background

Impact CO is in the business of organizing exhibitions for entertainment purposes and providing multimedia presentations and promotional advice for conventions, trade shows and special events. It alleges it began using the mark "Impact Productions" in commerce in March, 1997, and filed its application to register this mark with United States Patent and Trademark Office in the same year. This application was granted and the mark was registered to Impact CO in October, 2001.

Impact NJ is also in the business of special event planning. It alleges it has used the "Impact Productions" mark in its business since February, 1996, more than a year before Impact CO began utilizing the mark.

According to the declaration of Impact NJ's executive producer, Lauren Roth, her company first became aware of the existence of Impact CO in January, 2001. Later that year, in June, 2001, Impact NJ sent Impact CO a "cease and desist" letter notifying the Colorado company of its claimed senior use of the "Impact Productions" mark. The parties then negotiated for several months to resolve their conflicting claims to the mark. These negotiations were not successful.

In March, 2002, Impact NJ sought to resolve the parties' dispute by petitioning the federal Trademark Trial and Appeal Board ("TTAB") to cancel Impact CO's trademark registration because it interferes with Impact NJ's allegedly senior common law trademark rights. Impact CO responded by filing this action.

In January, 2001, at approximately the same time she learned of Impact CO's existence, Impact NJ's Roth volunteered to produce a dinner and awards presentation at the 2002 "Special Event," an annual international conference and trade show in which Roth had participated since 1993. The Special Event is organized and produced by Primedia Business Exhibitions ("Primedia"), which is headquartered in Connecticut but has offices in California, Colorado and elsewhere. Impact NJ

sought to build good will and gain industry recognition and experience through this volunteer effort.

Primedia ultimately invited Impact NJ to produce the 2002 Special Event dinner and presentation. In the course of planning this event, Impact NJ had numerous phone, letter and e-mail contacts with Colorado employees of Primedia and Colorado-based Primedia agents and consultants. These contacts occurred between January, 2001, and January, 2002, when the 2002 Special Event took place in Phoenix, Arizona. Primedia did not enter into a contract or pay Impact NJ for its services, but its Colorado representatives and agents reimbursed Impact NJ for its out-of-pocket expenses.

To promote the 2002 Arizona event, Primedia developed and printed an advertising flyer that it distributed throughout the country, including to Impact CO and some other Colorado residents. This lengthy flyer names Impact NJ twice in the course of identifying Roth as one of numerous contributors to the trade show. *See* Compl., Ex. B. Primedia prepared, produced and distributed the flyer without the direction, involvement or knowledge of Impact NJ.

Throughout the period in question Impact NJ also maintained a passive website advertising its services that was accessible in Colorado and elsewhere. Impact NJ does not have any employees, bank accounts, property, or customers in Colorado, or any other contacts with Colorado beyond those stated above.

*Legal Framework*

■ Impact CO, as the plaintiff, has the burden of establishing this court's personal jurisdiction over Impact NJ. *Benton v. Ca-*

*meco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004). On a motion to dismiss decided without an evidentiary hearing,[1] a plaintiff satisfies this burden by making a prima facie showing of personal jurisdiction. *Id.* In considering the motion, I must take all well pled facts of the complaint, but not mere conclusory allegations, as true. *See Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir.1995). I may also consider affidavits and other written materials submitted by the parties, *id.*, and must resolve any factual disputes raised by these materials in favor of Impact CO. *Benton,* 375 F.3d at 1074–75.

■ In a federal question case such as this, in which the federal statute at issue does not authorize nationwide service, personal jurisdiction is determined according to the law of the forum state. Fed.R.Civ.P. 4(k)(1)(A); *SCC Communications Corp. v. Anderson,* 195 F.Supp.2d 1257, 1260 (D.Colo.2002). The Colorado Supreme Court has interpreted Colorado's long arm statute to extend jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. *See, e.g., Keefe v. Kirschenbaum & Kirschenbaum,* 40 P.3d 1267, 1270 (Colo. 2002); *Benton,* 375 F.3d at 1075. Accordingly, if jurisdiction over a non-resident defendant is proper under the Due Process Clause, it is also authorized by Colorado's long arm statute. *Benton,* 375 F.3d at 1075; *see Keefe,* 40 P.3d at 1270.

■ The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant "only so long as there exist minimum contacts between the defendant and the forum State." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d

---

**1.** Neither party has requested an evidentiary hearing, and none is necessary given the is- sues presented.

490 (1980). The requisite minimum contacts exist if the non-resident defendant has continuous and systematic contacts with the forum state (general jurisdiction) or if the defendant (i) has purposefully directed activities at forum residents or otherwise acted to avail itself purposefully of the privilege of conducting activities there and (ii) the litigation results from alleged injuries that arise out of or relate to those activities (specific jurisdiction). *See Benton,* 375 F.3d at 1075; *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.,* 205 F.3d 1244, 1247 (10th Cir.2000). The touchstone of the minimum contacts analysis in both cases is "whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Benton,* 375 F.3d at 1078 (quoting *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559).

■ If sufficient minimum contacts are shown to establish either general or specific jurisdiction, the Due Process Clause requires that I further consider whether the exercise of personal jurisdiction over defendant would nonetheless offend traditional notions of fair play and substantial justice. *Intercon,* 205 F.3d at 1247; *see Benton,* 375 F.3d at 1078 This inquiry turns on whether it is reasonable in light of the circumstances surrounding the case to exercise personal jurisdiction over the non-resident defendant. *Benton,* 375 F.3d at 1078.

### Analysis

Impact CO asserts Impact NJ is subject to specific jurisdiction in this forum. Consistent with the authority cited above, in order to prevail on this issue at this stage of the litigation, Impact CO must make a prima facie showing that: (1) Impact NJ purposefully directed its activities at Colorado or its residents or performed some act by which it purposefully availed itself of the privilege of conducting activities in Colorado; and (2) Impact CO's claims arise out of or relate to Impact NJ's forum-related activities. *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir.2004); *see Intercon,* 205 F.3d at 1247. If Impact CO carries its burden with respect to these minimum contacts elements, then the burden shifts to Impact NJ to present a compelling case that the exercise of jurisdiction would nonetheless be unreasonable and thus offend traditional notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Schwarzenegger,* 374 F.3d at 802; *see also Benton,* 375 F.3d at 1083 (Holloway, J., dissenting).

■ With respect to the first element, Impact CO asserts Impact NJ purposefully directed activities at Colorado under the "effects" test derived from *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), and its progeny. This test generally applies to determination of specific jurisdiction in cases of intentional torts, including trademark infringement, *see, e.g., Dakota Industries, Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1388, 1391 (8th Cir.1991), in which a non-resident defendant has acted outside the forum state in a manner that injures a forum resident. *See, e.g., Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1077–78 (10th Cir.1995); *IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 261–65 (3rd Cir.1998). To show purposeful direction at the forum state in this instance, the plaintiff must make a prima facie case that the non-resident defendant: (1) committed an intentional act (2) expressly aimed at the forum state (3) that had an effect and defendant knew was likely to have an effect in the forum state. *See Calder,* 465 U.S. at 789–90, 104 S.Ct. 1482; *Schwarzenegger,* 374 F.3d at 803;

*SCC Communications Corp. v. Anderson,* 195 F.Supp.2d 1257, 1262 (D.Colo.2002).

Impact CO contends the effects test for demonstrating purposeful direction is met here based on: (1) Impact NJ's continued use of the "Impact Productions" mark in commerce, including in connection with the 2002 Arizona event, knowing of its registration by Impact CO and that Impact CO was a Colorado resident; (2) Impact NJ's transmittal of a cease and desist letter to Impact CO in Colorado; (3) Impact NJ's initiation of the TTAB proceeding seeking to cancel Impact CO's registration of the mark; (4) Impact NJ's communications with Colorado-based Primedia representatives and agents in connection with the 2002 Arizona event; and (5) Primedia's mailing of the flyer naming Roth and Impact NJ to Colorado residents.[2]

■ Impact CO's reliance on the effects test founders on the requirement that it show Impact NJ committed acts "expressly aimed" at Colorado, as none of the asserted actions by Impact NJ, considered singly or in combination, make this showing. First, that Impact NJ may have infringed on Impact CO's mark outside of Colorado, and did so knowing that Impact CO was a Colorado resident and that this infringement would have effects in Colorado, is not sufficient to demonstrate "express aiming" at this forum under the *Calder* test. *See, e.g., Far West,* 46 F.3d at 1078; *Schwarzenegger,* 374 F.3d at 807; *IMO,* 155 F.3d at 261–65; *see also Burger King,* 471 U.S. at 474, 105 S.Ct. 2174 (foreseeability of non-forum resident causing injury in forum state not sufficient for exercise of personal jurisdiction). *"Calder* did not carve out a special intentional tort exception to the traditional jurisdiction analysis, so that a plaintiff could always sue in his or her home state." *IMO,* 155 F.3d at 265. Impact CO must present "something more" than the injuries it allegedly suffered as a result of Impact NJ's out-of-forum infringement in order to make a prima facie case that Impact NJ expressly targeted it or Colorado through this conduct. *Schwarzenegger,* 374 F.3d at 804–05; *see Far West,* 46 F.3d at 1079–80 (rather than relying on allegations that non-resident's tortious conduct injured forum resident to establish constitutionally required minimum contacts, court must examine contacts created by defendant in committing the alleged tort).

■ Impact CO contends the requisite express aiming at Colorado is demonstrated by Impact NJ sending Impact CO a cease and desist letter and then petitioning the TTAB to cancel Impact CO's federal registration of the disputed mark. As a general rule, however, a defendant's reasonable, good faith actions to protect its alleged rights, including transmittal of cease and desist letters and litigation efforts against a forum resident, do not constitute "express aiming" at the forum sufficient to establish the constitutionally required minimum contacts with the forum. *See Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme,* 379 F.3d 1120, 1125 (9th Cir.2004); *Bancroft & Masters, Inc. v. Augusta National, Inc.,* 223 F.3d 1082, 1089 (9th Cir.2000) (Sneed and Trott, J. concurring); *Bandai America, Inc. v. Brown,* 2002 WL 31417189, *4 (C.D.Cal. June 1, 2002). Instead, such actions may demonstrate express aiming at the forum only if they constitute *wrongful* conduct targeted at the forum resident.

---

2. Consistent with Tenth Circuit authority, Impact CO does not assert NJ's maintenance of a passive website available to Colorado residents is a forum contact supporting specific jurisdiction. *See Soma Med. Int'l v. Standard Chartered Bank,* 196 F.3d 1292, 1299 (10th Cir.1999) (maintenance of passive website accessible to forum residents does not constitute purposeful availment of benefits of doing business in forum).

*See Yahoo!*, 379 F.3d at 1125; *Bandai*, 2002 WL 31417189, at *4. Here, Impact CO has neither alleged nor produced evidence that Impact NJ acted wrongfully, unreasonably or in bad faith in seeking to protect what it views as its common law trademark rights through the cease and desist letter and petition to the TTAB.[3]

Impact CO contends the Ninth Circuit's decision in *Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082 (9th Cir.2000), establishes that Impact NJ's letter and non-forum litigation efforts satisfy the requirement of expressing aiming at Colorado. In that case, which concerned rights to an Internet domain name, the non-resident defendant sent plaintiff a cease and desist letter, and more importantly, sent a letter to Network Solutions, Inc. ("NSI"), then the exclusive registrar of domain names in the United States, that automatically triggered a dispute resolution process that effectively required the plaintiff to sue or lose the right to use its mark. 223 F.3d at 1085. The *Bancroft* plaintiff specifically alleged that the defendant had deliberately triggered the NSI dispute resolution process as part of a wrongful attempt to appropriate the plaintiff's mark. *Id.* at 1087. Taking this allegation as true for purposes of deciding the motion, the Ninth Circuit held that the defendant's letter to the NSI had individually targeted plaintiff, a known forum resident, and thus satisfied the express aiming requirement of the *Calder* test. *Id.* at 1088. Two of the judges on the three judge panel concurred specially, however, to state that if subsequent developments established that the defendant had not acted wrongfully in initiating the NSI proceedings, but rather had acted reasonably and in good faith to protect its claimed mark against an infringer, then jurisdiction would be ripe for challenge. *Id.* at 1089. The Ninth Circuit has since clarified that such good faith efforts by a non-resident defendant to protect its own rights against a plaintiff do not constitute express targeting of the plaintiff rendering the defendant subject to specific jurisdiction in the plaintiff's home forum. *See Yahoo!*, 379 F.3d at 1126.[4]

■ The remaining Colorado contacts recited by Impact CO are also insufficient to establish Impact NJ expressly aimed its allegedly wrongful conduct at Colorado. The purpose of the purposeful direction/availment requirement is to ensure

**3.** Impact CO asserts summarily in its brief in opposition to Impact NJ's motion that Impact NJ's petition to the TTAB was tortious. *See* PL's Opposition at 2. Impact CO did not include this allegation in its complaint, however, and it provides no evidentiary support for this assertion. Impact CO also makes clear elsewhere in its motion that "Defendant's tortious act [is] the act of trademark infringement." *Id.* at 4.

**4.** Even if Impact CO could rely on Impact NJ's cease and desist letter and TTAB action to make a prima facie showing that Impact NJ purposefully directed actions at a Colorado resident, it would still have to demonstrate that its claims against Impact NJ arose from or relate to these contacts in order to establish specific jurisdiction. *See Intercon*, 205 F.3d at 1247; *Schwarzenegger*, 374 F.3d at 802. Other courts considering this question in the trademark infringement context have found such non-forum actions generally do not satisfy this separate jurisdictional element because the subject matter of actual controversy is whether the parties have intellectual property rights that have been infringed, not what the parties have said about these rights in letters and legal proceedings. *See, e.g., Elima Biotronics, LLC v. Fuente Cigar Ltd.*, 291 F.Supp.2d 1182, 1184–85 (D.Nev.2003); *Bandai*, 2002 WL 31417189, at *6 (letter threatening litigation does not arise out of or relate to alleged infringement unless it automatically divests plaintiff of its property or causes plaintiff's customers to cease doing business with it). Because I find Impact CO has failed to establish the first element of purposeful direction or availment by Impact NJ, I do not decide this issue.

that a non-resident defendant will not be haled into court based upon random, fortuitous, or attenuated contacts with the forum state. *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174. The other contacts cited by Impact CO, consisting of Impact NJ's contacts with Colorado through its association with Primedia and the 2002 Arizona event, fit into this category. It was merely fortuitous, for example, that some of the Primedia representatives and agents Impact NJ dealt with in planning the 2002 Arizona event were located in Colorado. It is also undisputed that Impact NJ had no involvement with or even knowledge of Primedia's distribution of a flyer naming it in Colorado, rendering this contact too attenuated to support jurisdiction. *See id.* at 474, 105 S.Ct. 2174 (unilateral activity of someone other than defendant cannot satisfy minimum contact requirement). There is no allegation or record evidence, moreover, suggesting that Impact NJ's use of the disputed mark in connection with its volunteer work on the 2002 Arizona event was expressly aimed at prospective clients in Colorado. Under these circumstances, Impact NJ's limited contacts with Colorado as a result of its involvement with Primedia and the 2002 Arizona event are too random, fortuitous and attenuated to find that Impact NJ purposefully directed its activities at Colorado and is subject to specific jurisdiction in Colorado.

For these reasons and those stated above, I find Impact CO has not established a prima facie case that Impact NJ expressly aimed intentional acts at Colorado and thus has not made the necessary showing under the *Calder* effects test that Impact NJ purposefully directed actions at Colorado or otherwise purposefully availed itself of the benefits of the privilege of conducting activities here. Absent such a showing, Impact NJ is not subject to specific jurisdiction in this forum. Accordingly, I GRANT Defendant's Motion to Dis-

miss Plaintiff's Complaint and order this action DISMISSED without prejudice.