**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 9 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

INTERCON, INC., an Oklahoma
corporation,

       Plaintiff-Appellant,

v.

BELL ATLANTIC INTERNET
SOLUTIONS, INC., a Delaware
corporation,

       Defendant-Appellee.

No. 98-6428

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 97-CV-1620-M)**

---

Submitted on the briefs:

Emmanuel E. Edem, Thomas A. Wallace of Norman, Edem, McNaughton &
Wallace, Oklahoma City, Oklahoma, for Plaintiff-Appellant.

James R. Webb of McAfee & Taft, P.C., Oklahoma City, Oklahoma, and Daniel
F. Katz, Robert A. Van Kirk, John C. Shipley, Jr. of Williams & Connolly,
Washington, D.C., for Defendant-Appellee.

---

Before **BALDOCK** , **HENRY** , and **MURPHY** , Circuit Judges.

---

**MURPHY** , Circuit Judge.

Plaintiff-appellant Intercon, Inc., appeals the district court's order dismissing its action against defendant Bell Atlantic Internet Solutions, Inc., for lack of personal jurisdiction. Because plaintiff made a prima facie showing that defendant purposefully directed its conduct at the forum state, and that this conduct caused plaintiff's harm, we reverse the district court's decision and remand the case for further proceedings.[1]

Plaintiff, an Oklahoma corporation, operates an Internet access service which provides customers with access to the World Wide Web and carries their electronic mail (e-mail) messages back and forth. For Internet routing purposes, plaintiff's domain name is "icon.net."

In July 1996, defendant, a Delaware corporation doing business in the northeastern and mid-Atlantic United States, began offering a dial-up Internet service. Because of certain provisions of the Telecommunications Act of 1996, defendant was not permitted to carry telephone transmissions across regional boundaries, but was required instead to use a global service provider to transmit the e-mail messages and Internet traffic. Defendant offered its subscribers

---

[1]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

a choice between several global service providers, including a New Jersey company called ICon CMT, whose domain name was "iconnet.net." Beginning in July 1996, defendant mistakenly routed its customer's e-mail messages to the wrong domain name, thus using plaintiff's mail server instead of ICon CMT's server.

In late October and early November, plaintiff's mail server experienced a severe slow-down in processing ability due to the thousands of mail messages being routed through it by defendant. Plaintiff's support personnel also began receiving e-mail and telephone inquiries from defendant's customers regarding the speed of their e-mail delivery. After plaintiff's president, Wes Chew, contacted defendant on several occasions, defendant began taking steps to correct the problem. Defendant finally terminated its use of plaintiff's facilities on February 20, 1997, by completely blocking customer access to the mail server.

Plaintiff brought this action against defendant in the United States District Court for the Western District of Oklahoma, seeking compensation for defendant's unauthorized use of the mail server and the damages caused thereby. To establish the existence of personal jurisdiction over defendant, plaintiff's president stated in an affidavit that he began contacting defendant in late October about the unauthorized use of plaintiff's mail server; that he was advised that defendant knew it was routing traffic to plaintiff's server and that e-mail traffic

from approximately 12,000 of defendant's subscribers was involved; that on one occasion he identified himself as one of defendant's subscribers and was given plaintiff's phone number for technical support; that even after contacting defendant about the unauthorized use he was not given a time frame within which defendant intended to correct the problem; that it was only after he engaged an attorney in late November that defendant agreed to stop giving the incorrect address to its customers by December 31, 1996, and to revise its Internet access program to prevent its subscribers from being routed through plaintiff's server by February 20, 1997; and that as a programmer familiar with Internet access and e-mail services, it was his opinion that defendant could have blocked customer access to the Oklahoma mail server immediately upon discovering the problem. See Appellant's App. at 74-78. In response, defendant submitted an affidavit stating that it conducted no business in Oklahoma; that it was not informed of the problem until "late December"; that it took immediate steps to halt the flow of e-mail traffic; and that it finally interrupted its customers' service on February 20, 1997. See id. at 80-84. The district court granted defendant's motion to dismiss, finding defendant's contacts with the forum state of Oklahoma were not purposefully established. See id. at 72-73. This appeal followed.

We review the district court's jurisdictional ruling de novo and resolve all factual disputes in favor of plaintiff. See OMI Holdings, Inc. v. Royal Ins. Co.,

149 F.3d 1086, 1091 (10th Cir. 1998). Although plaintiff bears the burden of establishing personal jurisdiction over defendant, see id., in the preliminary stages of litigation this burden is "light." Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).

> Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party. However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true.

Id. (citations and quotations omitted).

To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process. See Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1074 (10th Cir. 1995). Because Oklahoma's long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry. See Rambo v. American S. Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988).

The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant "so long as there exist minimum contacts between the defendant and the forum State." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) (quotation omitted). The "minimum contacts" standard may be met in two ways. First, a court may, consistent with due process, assert specific jurisdiction over a nonresident defendant "if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quotations and citations omitted). When a plaintiff's cause of action does not arise directly from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state. See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16 & n.9 (1984).

Even if defendant's actions created sufficient minimum contacts, we must still consider whether the exercise of personal jurisdiction over defendant would offend traditional notions of "fair play and substantial justice." Burger King Corp., 471 U.S. at 476 (quotation omitted). This inquiry requires a determination of whether the district court's exercise of personal jurisdiction over defendant is reasonable in light of the circumstances surrounding the case. See id. at 477-78.

Here, accepting plaintiff's evidence as true, we conclude that plaintiff has shown that defendant purposefully directed its conduct toward Oklahoma after the end of October 1996. At that point, defendant had notice that it was routing its customer's e-mail through the Oklahoma mail server and that the unauthorized traffic was causing problems for the Oklahoma-based company. It is possible that defendant knew this information even earlier, as it was already providing plaintiff's phone number to its customers for technical support before plaintiff advised defendant of the problem. Defendant nonetheless continued to provide plaintiff's address to its new subscribers for a full two months, until December 31, 1996, and permitted thousands of its old customers to access the Oklahoma server for an additional seven weeks, despite having the technological ability to prevent such access immediately upon discovering the problem. Although defendant may have had a legitimate business reason for not terminating its use of the Oklahoma mail server immediately–concerns over interrupting its customers' service–this does not negate the fact that defendant purposefully availed itself of the Oklahoma server for almost four months after being notified of the erroneous address.

In analogous situations, courts have held the use of a computer or network service located in a particular state created sufficient contacts to establish personal jurisdiction. See, e.g., CompuServe, Inc. v. Patterson, 89 F.3d 1257,

1263-65 (6th Cir. 1996) (finding personal jurisdiction existed over defendant in Ohio where defendant entered into contract to distribute software through plaintiff's Ohio Internet server and defendant repeatedly sent his software files to the Ohio server via e-mail); Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124-27 (W.D. Penn. 1997) (distinguishing advertising cases from those in which defendant enters into contracts with forum state residents "involv[ing] the knowing and repeated transmission of computer files over the Internet," and finding jurisdiction in infringement suit against news service that consciously transmitted electronic messages into the state); Plus System, Inc. v. New England Network, Inc., 804 F. Supp. 111, 118-19 (D. Colo. 1992) (finding jurisdiction based in significant part on use of forum state's computers to perform ATM processing services which benefitted defendant by providing its customers with nationwide ATM service); see also Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1322 (9th Cir. 1998) (finding purposeful availment when Illinois defendant established a website using California plaintiff's trademark as his domain name and then sought compensation to give up the name; defendant's conduct was expressly aimed at the forum state and caused its effects there).

Defendant argues that because it never intended to transmit traffic through Oklahoma, its inadvertent contacts with Oklahoma were merely "fortuitous," and therefore insufficient to establish personal jurisdiction, citing World-Wide

Volkswagen, 444 U.S. at 295 (characterizing car manufacturer's ties with Oklahoma as "fortuitous" because they resulted entirely out the fact that the plaintiffs had driven their car into that state). While this may be an accurate description of defendant's initial contacts with Oklahoma, after the end of October 1996, its continued transmission of e-mail through the Oklahoma mail server was knowing and intentional. See, e.g., Zippo Mfg., 952 F. Supp. at 1126 (holding service provider's contacts were not "fortuitous," because it "repeatedly and consciously chose to process [customers'] applications and to assign them passwords," it "knew that the result of these contracts would be the transmission of electronic messages into Pennsylvania," and "[t]he transmission of these files was entirely within its control").

We also hold that defendant's activities and their consequences have a substantial enough connection with Oklahoma to make the exercise of jurisdiction reasonable. See World-Wide Volkswagen, 444 U.S. at 292. After receiving notice of the routing error, defendant knew its conduct over the next four months was causing injury in Oklahoma, and it should reasonably have expected to be sued there. See Calder v. Jones, 465 U.S. 783, 789-91 (1984) (holding California jurisdiction over defendants was proper because their intentional, and allegedly tortious, conduct in Florida was calculated to cause

injury to plaintiff in California, and they must have "reasonably anticipate[d] being haled into court there").

We consider the following factors in deciding whether the exercise of jurisdiction is reasonable: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. See Burger King Corp., 471 U.S. at 477. We conclude these factors weigh in favor of exercising jurisdiction over defendant.

First, although there will certainly be some burden on defendant, it is a large interstate company accustomed to conducting business and litigation in multiple states. Second, Oklahoma has a "manifest interest" in providing a forum in which its residents can seek redress for intentional injuries caused by out-of-state actors. See Burger King, 471 U.S. at 473. Third, plaintiff is a small local company with limited resources, whose involvement in the underlying events has been totally involuntary. We have held that this third factor weighs heavily in favor of a plaintiff when the "[p]laintiff's chances of recovery will be greatly diminished by forcing [it] to litigate in a another forum . . . because the burden may be so overwhelming as to practically foreclose pursuit of the

-10-

lawsuit." OMI Holdings, 149 F.3d at 1097. Plaintiff's evidence indicates that it may well suffer this type of prejudice if forced to litigate outside the state. See Appellant's App. at 78. Fourth, Oklahoma seems to be the most efficient place to litigate the dispute. Although witnesses are located both at defendant's principal place of business in Virginia and at plaintiff's business in Oklahoma, the wrong underlying the lawsuit occurred in Oklahoma. The fifth factor does not appear to apply in this case. Upon balancing these factors, we conclude the exercise of personal jurisdiction over defendant is reasonable.

The judgment of the United States District Court for the Western District of Oklahoma is REVERSED.