**IACCESS, INC., a Utah corporation, Plaintiff,**

v.

**WEBCARD TECHNOLOGIES, INC., a California corporation, Defendant.**

**No. 2:01–CV–192C.**

United States District Court, D. Utah, Central Division.

Jan. 24, 2002. ·

---

Robert B. Lochhead, Parr Waddoups Brown Gee & Loveless, Salt Lake City, UT, Wesley M Lang, Randall B. Bateman, Morriss Bateman O'Bryant & Compagni PC, Salt Lake City, UT, for plaintiff.

C. Kevin Speirs, Dianna M. Gibson, Parsons Behle & Latimer, Salt Lake City, UT, Susan B. Meyer, John L. Haller, Brown Martin Haller & McClain, San Diego, CA, Kenneth E. Horton, Radar Fishman & Grauer, South Jordan, UT, for defendant.

### ORDER

CAMPBELL, District Judge.

Plaintiff iAccess ("iAccess") brings suit against Defendant WEBcard Technologies, Inc. ("WEBcard") asserting the following causes of action: (1) Declaratory Judgment of Invalidity, (2) Declaratory Judgment of Unenforceability, (3) False Advertising, (4) Unfair Competition, and (5) Tortious Interference with Economic Relations. WEBcard moves this court to dismiss the complaint for lack of jurisdiction and failure to state a claim. For the following reasons, the court finds that it lacks personal jurisdiction over WEBcard and grants WEBcard's motion.

### FACTS

iAccess and WEBcard both manufacture small, business-card sized compact discs, and both have applied for patent protection. The Patent & Trademark Office has issued WEBcard a patent, No. D435,853. iAccess' application is still pending. iAccess, then, brings suit as a non-patent holder.

iAccess is incorporated in Utah. WEBcard is incorporated in California. WEBcard has no place of business in Utah, no sales representatives, no distributors, no facilities, no phone numbers, and no employees in Utah. WEBcard admits to a single sale of $20.00 to a Utah resident. WEBcard created and operates a website. This website allows users to email WEBcard. Users may also subscribe to receive emails and mailings from WEBcard or log-in and view the progress of their transaction with WEBcard.

### DISCUSSION

WEBcard moves the court to dismiss the complaint on five different theories: (1) lack of subject matter jurisdiction, (2) ripeness, (3) failure to state a claim, (4) lack of personal jurisdiction, and (5) improper venue. The court considers the dispositive issue of personal jurisdiction first.

A court may bring a defendant into court only where it can exert personal jurisdiction. Personal jurisdiction over an out-of-state defendant is appropriate if Utah's long-arm statute permits the assertion of jurisdiction without violating federal due process. *Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1385 (Fed.Cir.1998). Because Utah's long arm statute extends to the limits of the federal due process clause, *SII MegaDiamond, Inc. v. American Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998), the inquiry is simply whether exercising juris-

diction over WEBcard comports with federal due process. Federal Circuit law governs the personal jurisdiction analysis for purposes of compliance with federal due process where an out-of-state patentee defends against a declaratory judgment action. *Akro Corp. v. Luker,* 45 F.3d 1541, 1543 (Fed.Cir.1995), *cert. denied,* 515 U.S. 1122, 115 S.Ct. 2277, 132 L.Ed.2d 281 (1995); *3D Sys., Inc. v. Aarotech Labs., Inc.,* 160 F.3d 1373, 1377–78 (Fed.Cir. 1998). Federal Circuit law also governs the analysis of personal jurisdiction for the False Advertising, Unfair Competition, and Tortious Interference with Economic Relations claims, as each claim involves allegations of false allegations of infringement, which go "hand-in-hand with its patent infringement claims, arises out of the same facts, and . . . resolution of the patent infringement issue [is] a significant factor." *3D Sys.,* 160 F.3d at 1377.

■ General personal jurisdiction permits a court to exercise power over a defendant without regard to the subject of the claim asserted. For such jurisdiction to exist, the defendant must be conducting substantial and continuous local activity in the forum state. In contrast, specific personal jurisdiction gives a court power over a defendant only with respect to claims arising out of the particular activities of the defendant in the forum state. Specific personal jurisdiction exists when a nonresident defendant purposefully establishes minimum contacts with the forum state, the cause of action arises out of those contacts, and jurisdiction is constitutionally reasonable. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 476–77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Akro,* 45 F.3d at 1545–46. iAccess argues only

that the court can exercise specific jurisdiction over WEBcard.[1]

■ For a court to exercise personal jurisdiction, a non-resident defendant must undertake "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and privileges of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). This is the so-called "purposeful availment" requirement, which ensures "that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp.,* 471 U.S. at 475, 105 S.Ct. 2174. Accordingly, WEBcard must have "deliberately" created some relationship with Utah that would serve to make Utah's potential exercise of jurisdiction foreseeable. *Id.* at 475–76, 105 S.Ct. 2174. In other words, WEBcard must have engaged in activity that is "expressly aimed" or "intentionally directed" at Utah residents. *Asahi Metal Indus. Co., Ltd. v. Superior Court,* 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Calder v. Jones,* 465 U.S. 783, 789–90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

■ iAccess argues that WEBcard purposefully directed activity at Utah residents by constructing and operating an interactive website. It is true that a website may form the basis of personal jurisdiction. Courts analyze the level and type of activity conducted on the website in question to determine jurisdiction. Richard E. Kaye, *Internet Web site activities of nonresident person or corporation as conferring personal jurisdiction under long-arm statutes and due process clause,* 81 A.L.R. 5th 41 (2000); *Zippo Mfg. Co. v.*

**1.** iAccess does not assert that WEBcard had substantial and continuous local activity in     Utah.

*Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1123–4 (E.D.Pa.1997). A passive website that does no more than make information available cannot by itself form the basis of jurisdiction. *Maynard v. Philadelphia Cervical Collar Co., Inc.,* 18 Fed.Appx. 814, 816 (Fed.Cir.2001); *Zippo,* 952 F.Supp. at 1123–24. Courts require "something more" than a website's existence that indicates the defendant purposefully directed its activities in a substantial way toward the forum state to find personal jurisdiction. *GTE New Media Servs. Inc. v. BellSouth Corp.,* 199 F.3d 1343 (D.C.Cir.2000); *Mink v. AAAA Development LLC,* 190 F.3d 333 (5th Cir. 1999); *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414 (9th Cir.1997); *Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295 (S.D.N.Y.1996), *aff'd,* 126 F.3d 25 (2nd Cir. 1997); *CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996). As the court in *Bensusan* explained,

> Creating a site, like placing a product into the stream of commerce, may be felt nationwide—or even worldwide—but, without more, it is not an act purposefully directed toward the forum state.... There are no allegations that King actively sought to encourage New Yorkers to access his site, or that he conducted any business—let alone a continuous and systematic part of its business—in New York.

937 F.Supp. 295, 301 (S.D.N.Y.1996), *aff'd,* 126 F.3d 25 (2nd Cir.1997). Without this requirement of "something more," the constitutional assurances built into the law of personal jurisdiction "would [be] shred[ded] ... out of practical existence." *GTE,* 199 F.3d at 1350.

■ Personal jurisdiction, however, is established where "a defendant clearly does business over the Internet," such as entering into contracts which require the "knowing and repeated transmission of computer files over the Internet." *Zippo*

*Mfg. Co.,* 952 F.Supp. at 1124. Many courts also require a nexus between the Internet business and the forum state. *See Cybersell,* 130 F.3d at 418; *Millennium Enters., Inc. v. Millennium Music, LP,* 33 F.Supp.2d 907, 921 (D.Or.1999); Kaye, *Internet Web site activities of non-resident person or corporation as conferring personal jurisdiction under long-arm statutes and due process clause,* 81 A.L.R. 5th 41 at § 6[b].

■ In the middle ground lie interactive websites, where a user can exchange information with the host computer. *Zippo Mfg. Co.,* 952 F.Supp. at 1124. WEBcard's website is one such interactive website. It allows users to email WEBcard or to subscribe to mailing lists. Moreover, customers may log-in and view the progress of their order. WEBcard's website does not allow users to purchase product, however. This is not a passive site that only makes information available, nor is it a site that clearly does business over the Internet.

The question is then whether the level of interactivity with Utah users and commercial nature of the exchange of information that occurs on the website makes the exercise of jurisdiction proper. *GTE,* 21 F.Supp.2d at 38; *Cybersell,* 130 F.3d at 418; *CIVIX–DDI LLC v. Microsoft Corp.,* 52 U.S.P.Q.2d 1501, 1505, 1506 (D.Colo. 1999); *Millennium Enters.,* 33 F.Supp.2d at 915–916 (D.Or.1999); *Zippo,* 952 F.Supp. at 1123–24. iAccess must show, as such, that either WEBcard intentionally targeted Utah users or that Utah users actually interacted with WEBcard's website. *See Millennium Enters.,* 33 F.Supp.2d 907 (finding that the defendants' interactive Internet Website, through which persons could purchase compact discs, request franchising information, and join a discount club, was not sufficient to support the assertion of per-

sonal jurisdiction, because the defendants did not actually consummate any transactions with Oregon residents, and there was no other evidence of any "deliberate and repeated" contacts with Oregon through the defendants' Website); *ESAB Group, Inc. v. Centricut, LLC,* 34 F.Supp.2d 323 (D.S.C.1999) (finding no basis for specific jurisdiction in the absence of proof that the defendant's alleged "offer to sell" the alleged infringing product through its Website was actually accessed by any South Carolina residents); *Coastal Video Comms., Corp. v. Staywell Corp.,* 59 F.Supp.2d 562 (E.D.Va.1999) (the holding that specific personal jurisdiction could not be asserted over the nonresident defendant solely on the basis of its interactive Website, at least in the absence of an allegation that the defendant actually sold anything via the Internet in the forum state); *Origin Instruments Corp. v. Adaptive Computer Sys., Inc.,* 1999 WL 76794 (N.D.Tex.1999) (holding that personal jurisdiction could not be asserted over the nonresident defendant as there was no evidence in the record to establish that the defendant actually had interacted with anyone in Texas through its Website or that the defendant had made any sales to a Texas resident); Kane, *Internet Web site activities of nonresident person or corporation as conferring personal jurisdiction under long-arm statutes and due process clause,* 81 A.L.R. 5th 41, § 6(b) (collecting cases). To prove a nexus between forum residents and the website, courts have examined factors such as "the number of 'hits' received by a web page from residents in the forum state, [or] other evidence that Internet activity was directed at, or bore fruit in, the forum state." *Cybersell,* 130 F.3d at 419.

iAccess does not allege that WEBcard targeted Utah, garnered Utah customers from its website, or even received hits on its website from Utah viewers. iAccess argues only that a moderately interactive website is sufficient to support the exercise of personal jurisdiction in a patent case, citing *Biometics, LLC v. New Womyn, Inc.,* 112 F.Supp.2d 869, 873 (E.D.Mo. 2000), and *Multi–Tech Sys., Inc.,* 122 F.Supp.2d 1046, 1051 (D.Minn.2000).

iAccess finds no support for its argument in either case. In *Biometics,* the court found personal jurisdiction because, "[i]t is clear that defendants' web site is intended to generate interest in the accused product in Missouri, and therefore is an offer to sell under the patent statute." *Id.* The court came to this conclusion only after reviewing the following evidence:

> In this case, the defendants' web site contains extensive product information and permits visitors to fill out and submit a detailed, multi-page 'Request Form' to obtain additional information on how to order the product. The web site also contains an 'independent sales representatives locator' that *includes a box labeled 'Missouri,'* on which Missouri residents are to click for more information about how to purchase the product. Defendants admit that when they receive an on-line request for information, they e-mail the requesting individual a URL address to obtain the order form, which the person must then print, fill out, and send to New Womyn together with payment. Defendants also admit they had *direct e-mail contact with one of the Missouri residents who purchased the accused product.*

*Id.* (emphasis added) (citations omitted). The court found personal jurisdiction based on evidence that the defendants intentionally targeted Missouri residents for sales and did sell product to a Missouri resident who had previously viewed the website, not the mere existence of an interactive website.

In *Multi–Tech Sys.,* visitors to VocalTec Ltd's website could register, download and

use Internet Phone, the allegedly infringing software product. Based on this evidence, the court concluded that "VocalTec Ltd's commercial activities over the Internet, marketed to Minnesota residents, support the exercise of personal jurisdiction." 122 F.Supp.2d at 1050. The court also noted additional contacts that supported exercise of jurisdiction, including: "VocalTec Ltd's Internet Phone was purchased in a Minnesota store[;] Internet Phone also was purchased by a Minnesota resident from a retail website, www.cdw.com[; and] [t]he accompanying software licensing agreement essentially required that Minnesota residents enter into contracts with VocalTec Ltd before using Internet Phone." *Id.* Again, the basis for jurisdiction lay with the intentional targeting of the forum state's residents and actual commercial effects in the forum state.

For this court to exercise personal jurisdiction, WEBcard must have purposefully directed activities at Utah. WEBcard did maintain a website that allowed interaction with users, but mere interactivity will not support jurisdiction. Rather, iAccess must allege a nexus between WEBcard's website and Utah residents. iAccess offers only that WEBcard made one $20.00 sale to a Utah resident.[2] No evidence exists, however, that links this one sale to a Utah resident to the website. Moreover, no evidence exists that a single Utah resident has visited the website. Here, WEBcard "has 'consummated no transaction' and [has] made no 'deliberate and repeated' contacts with [Utah] through [its] Web site." *Millennium Enters.*, 33 F.Supp.2d at 921 (citing *CompuServe*, 89 F.3d at 1265). Without such proof, this court may not exercise personal jurisdiction.

**2.** iAccess does not argue that this sale by itself is sufficient contact with Utah for this court to exercise personal jurisdiction, nor could it.

### ORDER

For the foregoing reasons, the Defendants motion to dismiss for lack of personal jurisdiction is GRANTED.

See *Harnischfeger Eng'rs v. Uniflo Conveyor Inc.*, 883 F.Supp. 608, 612 (D.Utah 1995).