**SYSTEM DESIGNS, INC., a Utah corporation, Plaintiff,**

v.

**NEW CUSTOMWARE COMPANY, INC., a California corporation, Defendant.**

**No. 2:01–CV–0070PGC.**

United States District Court,
D. Utah,
Central Division.

March 5, 2003.

---

Peter M. deJonge, David R. McKinney, Thorpe North & Western, Sandy, UT, for plaintiff.

James S. Jardine, Arthur B. Berger, Ray Quinney & Nebeker, Salt Lake City, UT, Marc C. Levy, Preston Gates & Ellis, Seattle, WA, for defendant.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

CASSELL, District Judge.

Defendant New CustomWare Company, Inc. ("New CustomWare") filed a motion to dismiss this action for lack of personal jurisdiction. Plaintiff System Designs, Inc. ("System") responded arguing sufficient contacts to establish jurisdiction. After reviewing the record and hearing oral argument, the court finds sufficient contacts with Utah to establish personal jurisdiction over New CustomWare and therefore denies its motion to dismiss.

### Statement of Facts

The facts relevant to this issue do not appear to be in dispute. Since 1978, System Designs owned and used the registered trademark of "CustomWare," for use with its computer software. System is a Utah company. Its computer software applications involve payroll administration, accounting applications, inventory management, and work flow management. System currently maintains a website advertising its software.

New CustomWare provided training, consulting, and mentoring services to companies focusing specifically on JAVA web service technology and used the New CustomWare mark in connection with its services. New CustomWare typically provided training to its customers on-site, and at their customer's facilities throughout the United States. New CustomWare provided seminars to the general public through-out the United States, but held none in Utah.

New CustomWare formerly maintained a website—*www.CustomWare.com*—and on that website indicated it served over 500 clients. The New CustomWare clients included large corporations with a national presence, including U.S. West, Wells Fargo, AT & T, Dell, Qwest and Sprint. The website advertised New CustomWare and indicated it will provide service at any location of the customer's choice. The site allowed customers to register and pay for New CustomWare training courses on line. The site also included a limited access section restricted to those with a username and password provided by the defendant. The limited access section of the website provided updates related to JAVA (a programming language) and the training courses New CustomWare offered. Visitors to the website could communicate with New CustomWare about their training needs via an e-mail through the website. Approximately 10 customers actually used the website to register for classes.

New CustomWare essentially was a "virtual" company. Its president, Mr. Salil Deshpande, resided in California. The primary asset of New CustomWare consisted of the "trainers" employed by New CustomWare to travel around the United States and teach the classes requested by the New CustomWare clients. New CustomWare had neither a manufacturing plant nor any "brick and mortar" facility housing its products. Instead, its trainers resided throughout the United States. New CustomWare never taught a class in Utah nor did any of their trainers reside in Utah.

From June 2001 through November 2001, New CustomWare placed advertisements in *JAVA Developer's Journal* ("*JDJ*"), advertising its services and including the CustomWare mark. During

this time frame, over 100,000 individuals per month subscribed to *JDJ* throughout the United States. During May 2001, *JDJ* sold 966 copies of this publication in Utah, either through subscriptions or newsstand sales.

In October 2000, System sent a letter (apparently one of several) to New CustomWare advising it that continuing use of the New CustomWare mark infringed on System's trademark rights. New CustomWare claims it never received the letter and, in any event, continued to use the New CustomWare mark.

On October 4, 2001, System filed a complaint in this court, alleging trademark infringement and federal and state unfair competition claims. System sought a preliminary and permanent injunctions, declaratory judgment, general and punitive damages, and costs and fees. New CustomWare responded, raising affirmative defenses including lack of personal jurisdiction, improper venue, forum nonconviens, laches, statute of limitations, and abandonment of trademark. New CustomWare further counterclaimed, alleging the trademark had became generic and seeking cancellation of the trademark.

Recently, New CustomWare ceased operations. It now only collects receivables.

## Standard of Review

The matter is currently before the court on New Custom Ware's motion to dismiss. System bears the burden of establishing personal jurisdiction over a nonresident defendant in a diversity action.[1] However, New CustomWare filed this motion for lack of personal jurisdiction based on affidavits and other written materials, and thus System need only make a prima facie showing of personal jurisdiction.[2] The court resolves all factual disputes in the plaintiff's favor in determining whether the plaintiff has made the required prima facie showing.[3]

## Specific Personal Jurisdiction

■ System only alleges *specific* personal jurisdiction over New CustomWare. Specific personal jurisdiction exists when a non-resident defendant purposefully establishes sufficient minimum contacts with the forum state, the cause of action arises out of these contacts, and jurisdiction is constitutionally reasonable.[4] The evaluation of specific jurisdiction requires a three-part inquiry: 1) the defendant's acts or contacts must implicate Utah under the Utah long-arm statute; 2) a nexus must exist between the plaintiff's claims and the defendant's acts or contacts; and 3) the application of the Utah long-arm statute must satisfy the requirements of federal due process.[5] Utah's long-arm statute provides in pertinent part:

> Any person ... who in person or through an agent does any of the following enumerated acts, submits himself to the jurisdiction of the courts of this state as to any claim arising out of or related to:
>
> 1) the transaction of any business within the state;
>
> 2) the contracting to supply goods or services to the state;

**1.** *See Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1075 (10th Cir.1995).

**2.** *See Rambo v. American Southern Ins. Co.,* 839 F.2d 1415, 1417 (10th Cir.1988) *quoting Behagen v. Amateur Basketball Ass'n of U.S.A.,* 744 F.2d 731, 733 (1984) *cert. denied,* 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985).

**3.** *Id.*

**4.** *See iAccess, Inc. v. WEBcard Technologies, Inc.,* 182 F.Supp.2d 1183, 1186 (D.Utah 2002) *citing Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476–77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

**5.** *See Soma Medical Intern. v. Standard Chartered Bank,* 196 F.3d 1292 (10th Cir.1999).

3) the causing of any injury within this state whether tortious or by breach of warranty ... [6]

■ The Utah legislature declared that the long-arm statute must be interpreted broadly "so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." [7] It is frequently helpful to undertake the due process analysis first, because any set of circumstances that satisfies due process will also satisfy the long-arm statute.[8] The court will proceed in this fashion.

### A. Minimum Contacts

■ The first prong of the due process test looks at whether the defendant has sufficient minimum contacts with the forum state. In judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum, and the litigation.[9] Minimum contacts must have a basis in some act by which the defendant purposefully avails itself of the privilege of conducting activities in the forum state, thus invoking the benefits and privilege of its laws.[10] The requirement of "purposeful availment" ensures that the defendant will not be haled into a jurisdiction as a result of random, fortuitous, or attenuated contacts.[11] This requires New CustomWare to have deliberately created a relationship with Utah that would serve to make Utah's exercise of jurisdiction foreseeable.[12] New CustomWare must "expressly aim" or "intentionally direct" its activity at Utah residents.[13]

System argues five grounds for finding such minimum contacts: (1) intentional acts of New CustomWare infringing a Utah trademark; (2) the New Custom-Ware website, using the Customware trademark; (3) the advertisement in the JDJ; (4) the letter from System to New CustomWare alerting New CustomWare that it was infringing on a Utah company; and (5) these contacts taken collectively. The court will address each of these in turn.

### 1. Trademark infringement

■ Trademark infringement is a tort.[14] In a tort case, as explained by the Supreme Court in *Calder v. Jones*, jurisdiction may attach if the defendant's conduct is aimed at or has an effect in the forum state.[15] Personal jurisdiction can be based upon intentional actions, expressly

---

6. Utah Code Ann. § 78–27–23.

7. Utah Code Ann. § 78–27–22; *see Miner v. Rubin & Fiorella, LLC.*, 242 F.Supp.2d 1043, 1047–48 (D.Utah 2003).

8. *See SII MegaDiamond, Inc. v. American Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998); *See also Far West Capital*, 46 F.3d at 1075; *see also Soma Medical*, 196 F.3d at 1298.

9. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir.1998).

10. *See Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

11. *Id.citing Burger King*, 471 U.S. at 475, 105 S.Ct. 2174.

12. *Id.citing Burger King*, 471 U.S. at 475–76, 105 S.Ct. 2174.

13. *Id.citing Asahi Metal Industry Co. v. Superior Court of California, Solano County*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *and Calder v. Jones*, 465 U.S. 783, 789–90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

14. *See Keds Corp. v. Renee Intern. Trading Corp.*, 888 F.2d 215, 218 (1st Cir.1989); *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club, Ltd. Partnership*, 34 F.3d 410, 411–12 (7th Cir.1994); *Heroes, Inc., v. Heroes Foundation*, 958 F.Supp. 1, 5 (D.D.C. 1996).

15. *See Calder*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *and Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.1998).

aimed at the forum state, causing harm, the brunt of which is suffered, and which the defendant knows is likely to be suffered, in the forum state.[16]

The Ninth Circuit discussed *Calder*'s "effects test" in trademark infringement cases in *Cybersell, Inc. v. Cybersell, Inc.*[17] In that case, a Florida company with a website directly targeting Florida residents allegedly infringed on an Arizona company's trademark. The Arizona company had not completed its federal registration of its trademark at the time the Florida website began operation. The Florida website required those seeking information to e-mail Cybersell in Florida for more information and listed a local Florida phone number. Upon learning of the potential infringement, the Florida company immediately changed the name of its company and its domain name on the web. The Ninth Circuit concluded that personal jurisdiction over the Florida defendants was not proper in Arizona. The court merely held that there was nothing comparable about the Florida web-page to the facts in *Calder*, which involved a libelous newspaper article targeting a forum state resident.[18]

The Ninth Circuit in *Panavision* further discussed the nature of the "effects" test in trademark infringement cases. The court held that a defendant who had registered the Panavision domain name in a scheme to extort money from Panavision in California, was subject to personal jurisdiction under the *Calder* "effects" test.[19] The court held the mere registration of the domain name and the posting of a website

alone was insufficient to support personal jurisdiction. "Something more" was required to demonstrate the defendant directed his activity toward the forum state.[20] In that case, the scheme to extort tipped the scales to find personal jurisdiction under the "effects" test.[21] The court concluded that the defendant's intentional misconduct, knowing his actions would cause injury in California, justified the finding of personal jurisdiction.[22]

The Seventh Circuit also found jurisdiction under *Calder* over a non-resident defendant in a trademark infringement case when the defendant "entered" Indiana by broadcasting infringing material into the forum. The Circuit observed that Indiana consumers were the most likely to be confused by the broadcasts.[23] The District Court for the District of Columbia followed this logic as well holding that in a trademark case the wrong takes place where the confusion in is likely to occur.[24]

Under all of these cases, a strong argument can be made here for finding that New CustomWare is subject to personal jurisdiction in Utah based on alleged infringement alone. Trademarks are registered in a national database, accessible to anyone. By registering a trademark with this database, an owner of a mark puts the world on notice—literally—that they have the rights to that mark. Not only does this establish a constructive notice as to the right to use the mark, it also establishes a constructive notice as to where the mark is registered. Therefore, to avoid suit in Utah, New CustomWare needed only to look up the CustomWare mark

16. *Id.*

17. 130 F.3d 414, 420 (9th Cir.1997).

18. *Cybersell,* 130 F.3d at 420.

19. *See Panavision* 141 F.3d 1316.

20. *Panavision* 141 F.3d at 1321.

21. *QRM Pub. Co., Inc. v. Reed,* 1986 WL 6490, 230 U.S.P.Q. 217 (S.D.N.Y.1986).

22. *Panavision* 141 F.3d at 1322.

23. *Indianapolis Colts,* 34 F.3d at 412.

24. *Heroes, Inc.,* 958 F.Supp. at 5.

*before* it chose to adopt it for its company name. A search would have quickly revealed that CustomWare was a registered Utah trademark, thereby warning New CustomWare it might be subject to suit in Utah if it choose to use that mark.

The *Cybersell* case is instructive on this point. In that case, the Ninth Circuit highlighted the fact that the "Cybersell" Arizona mark was not registered at the time the infringing use of "Cybersell" began in Florida. This strongly suggests that the Ninth Circuit might have viewed the case differently had the mark in fact been registered. In such a situation, the person registering the trademark could reasonably expect to defend the mark in their own jurisdiction. Here, System, having taken the time and resources to register its trademark, should not be required to travel to distant locations where potential infringers might be located to defend its mark.

In light of easy nationwide accessibility of the trademark registry, an argument can be made for specific personal jurisdiction based on an allegation of trademark infringement alone. Under *Calder*, the "effects" of the infringement are easy to determine: there is a *national listing* indicating exactly which state will feel the "effects" of the infringement. No other tort (except possibly patent infringement) provides this kind of advance notice regarding location. This might also suggest, as a corollary, that a unilateral act by a plaintiff without notice to an infringer—such as moving to a different state or selling the trademark to a company in another location—would not be sufficient to establish jurisdiction.[25]

But, like the Seventh[26] and Ninth Circuits,[27] this court finds it unnecessary to create a *per se* rule regarding direct trademark infringement. Here, we have "something more" to establish jurisdiction. New CustomWare does not argue it mistakenly used the CustomWare trademark. New CustomWare's defenses to the complaint are apparently laches, estoppel, acquiescence, abandonment, and that the mark has become generic. For example, New CustomWare argues that its use of the CustomWare trade name openly and continuously for three years, without response from System, induced them to believe they could use the trademark. Without addressing the merits of these defenses, it may be that the defenses would involve a showing that New CustomWare knowingly used a Utah company's mark for three years. At this stage in the proceedings, the court is required to review the facts in the light most favorable to the plaintiff. In that light, it hardly would be surprising for New CustomWare to find itself subject to a lawsuit in Utah to test the validity of its defenses.

Furthermore, the nature of the website and New CustomWare's activities demonstrate that this website intended to reach potential customers of System in Utah, not just California. As discussed below, third parties could enter into contracts, register and pay for classes on-line, or call an 800 number to reach New CustomWare. Several courts have found that a defendant's solicitation of business in the forum, can, on its own, form the basis for jurisdiction.[28] By listing companies with a large Utah presence, at this stage in the proceedings the court must conclude that New Custom-

---

25. *See OMI Holdings, Inc.,* 149 F.3d at 1091.

26. *See Indianapolis Colts,* 34 F.3d 410.

27. *See Panavision,* 141 F.3d 1316.

28. *See QRM Pub. Co., Inc.,* 1986 WL 6490, 230 U.S.P.Q. 217 (S.D.N.Y.1986); *Heroes, Inc.,* 958 F.Supp. 1 (D.D.C.1996); *Keds Corp.,* 888 F.2d 215 (1st Cir.1989); *PurCo Fleet Services, Inc. v. Towers,* 38 F.Supp.2d 1320 (D.Utah 1999).

Ware *expressly aimed* its actions at the Utah market with its website and sought business from customers here.

Finally, by using a Utah mark, the brunt of any confusion would be felt in Utah.

As a result of all these factors, the court concludes that jurisdiction for the alleged trademark infringement is proper in Utah under the "effects" test alone.

*2. The Website*

■ Jurisdiction in this case need not rest on the trademark infringement alone. Other factors bolster the conclusion that jurisdiction is proper in Utah. Foremost among these is New CustomWare's website. Evaluating specific personal jurisdiction in "Internet cases" ultimately comes down to a "particularized inquiry" of the facts surrounding the website and the actions that New CustomWare took related to the trademark infringement.[29] A particularized inquiry into the facts is required by both two approaches recognized in leading cases—the "sliding scale" test articulated in *Zippo Mfg. Co. v. Zippo Dot Com.*[30] and the "something more" standard first articulated in *Bensusan Restaurant Corp. v. King.*[31]

■ A website can form a basis for personal jurisdiction, depending on the level and type of activity conducted on it.[32] Personal jurisdiction can easily be found were a defendant clearly does business over the Internet such as entering into contracts which require the knowing and repeated transfer of files over the Internet.[33] On the other hand, a "passive" website that does nothing more than make information available cannot, by itself, form the basis of jurisdiction.[34] In the middle ground lie "interactive" websites, where a user can exchange information with the host computer.[35] It should also be noted that most courts also required a finding of a nexus between the Internet business and the forum state.[36]

The website at issue here appears to fall in the middle ground. The courts that have evaluated these middle-ground cases typically look for "something more" than a website's existence to find specific personal jurisdiction. The inquiry revolves around a determination of whether or not the defendant purposefully direct its activities in a *substantial way* toward the forum state to find personal jurisdiction.[37] As the Dis-

---

**29.** *See Far West,* 46 F.3d 1071 (10th Cir. 1995).

**30.** *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1123–24 (W.D.Pa.1997).

**31.** *See Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295 (S.D.N.Y.1996) *affirmed* 126 F.3d 25 (2nd Cir.1997); *CompuServe Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996); *GTE New Media Services, Inc. v. BellSouth Corp.,* 199 F.3d 1343 (D.C.Cir.2000); *iAccess,* 182 F.Supp.2d at 1186.

**32.** *iAccess,* 182 F.Supp.2d at 1186, *citing* Richard E. Kay *Internet Web site activities of nonresident person or corporation as conferring personal jurisdiction under long-arm statutes and due process clause,* 81 A.L.R. 5th 41 (2000); *Zippo Mfg. Co.,* 952 F.Supp. at 1123–24.

**33.** *iAccess,* 182 F.Supp.2d at 1187, *citing Zippo Mfg. Co.,* 952 F.Supp. at 1124.

**34.** *iAccess* 182 F.Supp.2d at 1186 *citing Zippo Mfg. Co.,* 952 F.Supp. at 1123–24.

**35.** *Zippo Mfg. Co.,* 952 F.Supp. at 1124.

**36.** *See Cybersell Inc.,* 130 F.3d at 418; *Millennium Enterprises, Inc. v. Millennium Music, LP,* 33 F.Supp.2d 907, 921 (D.Or.1999).

**37.** *See Bensusan Restaurant Corp.,* 937 F.Supp. 295 (S.D.N.Y.1996); *CompuServe Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996); *GTE New Media Services, Inc.,* 199 F.3d 1343 (D.C.Cir.2000); *iAccess,* 182 F.Supp.2d at 1186.

trict Court for the Southern District of New York explained in *Bensusan:* "Creating a site, like placing a product into the stream of commerce, may be felt nationwide—or even worldwide—but, without more, it is not an act purposefully directed toward the forum state." [38]

The question in this case thus becomes what is the nature of the interactivity over the Web. The critical inquiry in determining whether or not there was a purposeful availment of the forum jurisdiction is not merely the quantity, but the quality of the contacts.[39] The quantity of contacts with the forum jurisdiction, however, remains an appropriate consideration.[40]

Two cases usefully analyze the issues presented in this case: *iAccess v. WEBcard Technologies, Inc.*,[41] decided by this court; and *Rainy Day Books v. Rainy Day Books & Cafe, L.L.C.*,[42] decided by the District Court of Kansas. *iAccess* involved a dispute over the validity of a patent. This court held that a minimally interactive website with only a single sale to a Utah resident was not sufficient to establish personal jurisdiction over the defendant in Utah. This court found the defendant had consummated no transactions, made no deliberate or repeated contacts, and had no "hits" on its website from Utah users. The court also imposed a "nexus" requirement on the "sliding scale" recognized in *Zippo*.[43] The court found the moderately interactive website, without a clear nexus to Utah, did not justify the exercise of personal jurisdiction.

*iAccess* should be contrasted with *Rainy Day Books*.[44] *Rainy Day Books* found jurisdiction properly lay in Kansas over a Maryland bookseller that had infringed on the trademark of a Kansas bookseller. The court concluded that the defendant had established a commercial website allowing it to "do business" and "enter into contracts" with residents of a foreign jurisdiction over the Internet.[45] The website allowed third parties to subscribe to a mailing list and purchase books through the website. The number of actual sales to Kansas residents was unknown.[46] The court held:

> ... the focus of the inquiry is on *Defendant's actions* in setting up and maintaining a commercial website, which *targeted Kansas residents* by its alleged use of Plaintiff's service marks.... Proof of an actual book sale to a Kansas resident from Defendant's website merely supports Plaintiff's contention that defendant's website is a commercial website *accessible* by Kansas residents.[47]

Not surprisingly, New CustomWare argues that this case more closely resembles *iAccess* than *Rainy Day Books*. New CustomWare urges this court to look at the fact that very few of their clients booked their training classes through the website. However, the court is concerned with placing undue emphasis on the sale or transactions requirement. On the one hand, it seems overinclusive. If a sale or transaction is the standard for jurisdiction, a plaintiff could simply purchase a product

---

**38.** *Bensusan,* 937 F.Supp. at 301.

**39.** *Rainy Day Books, Inc. v. Rainy Day Books & Cafe, L.L.C.,* 186 F.Supp.2d 1158, 1165–66 (D.Kan. 2002).

**40.** *Id.*

**41.** *See* 182 F.Supp.2d 1183 (D.Utah 2002).

**42.** *See* 186 F.Supp.2d 1158 (D.Kan.2002).

**43.** *Id.* at 1189.

**44.** *See Rainy Day Books,* 186 F.Supp.2d 1158 (D.Kan.2002).

**45.** *Id.* at 1164.

**46.** *Id.*

**47.** *Id.* at 1165.

online and essentially manufacture jurisdiction—a concern other courts have noted.[48] On the other hand, the sales or transactions requirement seems underinclusive. A major transaction could be negotiated over the internet with extensive discussions over an extended time, only to fall through at the last minute for reasons unrelated to the jurisdictional inquiry (e.g., a nationwide economic downturn).

These same types of concerns arise in looking at the level of "interactivity" with Utah users. Any plaintiff with litigation pending could merely "hit" a web page repeatedly to help create jurisdiction. The court must focus on the *defendants'* actions regarding their web page. The standards that are helpful are those that articulate the need for "deliberate and repeated" contacts with the forum,[49] "intentional targeting" of the forum,[50] or a defendant's "purposefully directing" its conduct towards the forum.[51]

In this case, New CustomWare did not have deliberate or repeated contacts with Utah. However, New CustomWare's own creation—its website—demonstrates an intentional *targeting* of Utah. New CustomWare's "product" in this case was in fact a service: training employees in certain types of software for use in their employment. Looking at the website, New CustomWare intended its site to reach potential clients in Utah. New CustomWare offered on-line registration for its classes and an ability to set up a "personalized" training programs. Customers could design training programs without picking up a phone, even paying for services by credit card on-line. Clients of New Custom-

Ware could sign up for updates on their class materials accessible by a special password. More important, New CustomWare listed its large clients on their website, including Wells Fargo, Qwest, U.S. West, AT & T, Sprint, and Dell—all companies with substantial connections to Utah. By listing them as clients, New CustomWare was suggesting to Utah companies the desirability of doing business with it. To be sure, the degree of "targeting" in this case is not high. The large companies listed by New CustomWare are nationwide companies not specifically and specially identified with Utah. But nonetheless, the targeting of Utah (along with other states) exists. The mere fact that the targeting was unsuccessful in the sense that no clients in Utah actually chose to contract over the website is not determinative.

The court also notes that there is a device for a company to restrict its potential liability in other jurisdictions. If New CustomWare did not seek Utah clients, it could have used limiting language on its website or removed out-of-state residents from any mailing lists to ensure they did not subject themselves to jurisdiction—as the defendants did in *Donmar, Inc. v. Swanky Partners, Inc.*[52] Far from avoiding connections with Utah, however, New CustomWare's own actions in offering registration and design of training classes through their website then including a list of major clients with Utah connections, demonstrates they purposefully directed their conduct toward Utah. Taken in combination with the alleged trademark in-

**48.** *Amazon.Com, Inc. v. Kalaydjian,* 2001 WL 491752, 58 U.S.P.Q.2d 1247 n. 3 (W.D.Wash. 2001).

**49.** *iAccess,* 182 F.Supp.2d at 1187 *quoting Millennium Enterprises,* 33 F.Supp.2d 907 (D.Or.1999).

**50.** *iAccess,* 182 F.Supp.2d at 1187.

**51.** *See Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.,* 205 F.3d 1244, 1247 (10th Cir.2000).

**52.** 2002 WL 1917258 (N.D.Ill. Aug.20, 2002) p. 1.

fringement, the website thus provides an additional basis for jurisdiction.

### 3. JDJ Advertisement

■ System argues that New Custom-Ware's placement of an advertisement in a nationally-distributed trade magazine indicates that New CustomWare purposefully availed itself of the benefits and protections of Utah law. The Tenth Circuit has held that mere placement of an advertisement in a nationally distributed newspaper or magazine does not rise to the level of purposeful contact with a forum required by the constitution in order to exercise personal jurisdiction.[53] On its own, this advertisement does not establish minimum contacts. At the same time, however, the Tenth Circuit has been clear that national advertisement "by itself" is "not always sufficient" to establish minimum contacts, particularly were there is nothing in the record regarding the extent of the subscriptions in the forum state.[54] Here, however, the national advertisement can be considered along with other facts in determining jurisdiction, particularly because it is undisputed that several hundred copies of the periodical in question were sold in Utah.

### 4. Letters to New CustomWare

■ System also contends that its various letters to Mr. Deshpande put New CustomWare "on notice" of a potential infringement lawsuit in Utah. System maintains that New CustomWare's continued use of the trademark, after receipt of the letters, constituted an acceptance of Utah as jurisdiction on this matter.

System's argument relies on the Tenth Circuit decision in *Intercon v. Bell Atlantic Internet Solutions*,[55] in which the Circuit held that a Delaware defendant who routed 12,000 of its customers e-mail through an Oklahoma e-mail server was subject to jurisdiction in Oklahoma.[56] In that case, the plaintiff contacted the defendant and told it that over 12, 000 e-mail messages from their subscribers erroneously came through their server in Oklahoma.[57] The defendant did nothing in response to the problem for several months, and at one point gave out the plaintiff's number to its subscribers for technical support.[58] On these facts, the Circuit found that the defendant had knowledge of the routing error, and its conduct over the next four months causing injury in Oklahoma created an expectation it could be sued in Oklahoma.[59]

System urges this court to analogize the notification of the routing problem to their letters raising the trademark problem. System's contact with New CustomWare, however, differs significantly from the situation in *Intercon*. In that case, a defendant was in fact taking an action in the forum statute-to wit, sending e-mails through the state. In contrast, the letter here was sent by the plaintiff to the defendant notifying them of an infringement claim. If this were sufficient grounds of jurisdiction, then plaintiffs in an infringement action could always manufacture jurisdiction over the defendant by the simple

---

53. *See Sunwest Silver, Inc. v. International Connection, Inc.* 4 F.Supp.2d 1284 (D.N.M. 1998) *citing Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Co-op.* 17 F.3d 1302, 1305 (10th Cir.1994); *and Williams v. Bowman Livestock Equipment, Co.,* 927 F.2d 1128, 1131 (10th Cir.1991).

54. *Williams,* 927 F.2d at 1131.

55. 205 F.3d at 1248.

56. *See* 205 F.3d 1244 (10th Cir.2000).

57. *Id.* at 1246.

58. *Id.*

59. *Id.* at 1248.

▄▄▄▄▄▄▄▄▄▄▄▄

expedient of mailing a letter raising the possibility of an infringement action. The court gives no weight to the letter alerting New CustomWare of possible infringement.

### 5. Combination of all facts as a basis for jurisdiction

For the reasons explained above, there are several factors suggesting personal jurisdiction-the alleged trademark infringement, the interactive website, and nationally distributed advertisements. The court must, of course, consider the contacts with the forum state collectively rather than isolation, as the "particularized inquiry" standard implies.[60] Taking the factors together, the court finds that there are clearly sufficient minimum contacts to justify exercising specific personal jurisdiction under the due process test.

### B. Fairness.

▄▄▄▄ Once it has been established that a defendant's actions created sufficient minimum contacts, the court still must consider whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice.[61] This inquiry requires a determination of whether the district court's exercise of jurisdiction over the defendant is reasonable in light of the circumstances surrounding the case.[62] In determining whether the exercise of jurisdiction is reasonable the court must look at the following factors: 1) the burden on the defendant; 2) the forum state's interest in resolving the dispute; 3) the plaintiff's interest in receiving conve-

nient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the several states in furthering fundamental substantive social policies.[63]

After examining these factors, the court concludes that the exercise of jurisdiction in this case is reasonable. New CustomWare's burden is a factor only if the inconvenience to it is so great as to constitute a deprivation of due process.[64] It does not appear the inconvenience approaches that level. Moreover, Utah has a significant interest in resolving a dispute regarding a trademark used by a Utah company. Finally, that Utah company has a significant interest in receiving convenient and effective relief in its home state. As discussed above, System took the time and effort to properly register its trademark in the trademark registry. It is not unreasonable to require New CustomWare to come to Utah with its challenges to that trademark. Jurisdiction in Utah is, therefore, not constitutionally unreasonable.

### C. Nexus

▄▄▄▄ Having rejected the constitutional objections to jurisdiction, the court must consider two requirements under the Utah long-arm statute: nexus and doing business within the state. These issues can be summarily resolved. With respect to nexus, the issue is whether the plaintiff's alleged injuries arise out of or relate to defendant's contacts with this jurisdiction.[65] In this case, it is clear that the injuries have such a nexus.

---

60. See Far West, 46 F.3d 1071 (10th Cir. 1995).

61. Burger King, 471 U.S. at 476, 105 S.Ct. 2174; quoting International Shoe Co. v. State of Wash., 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

62. Id.

63. World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

64. Rainy Day, 186 F.Supp.2d at 1166.

65. Id.

■ Similarly, with respect to the issue of doing business within the state, the long-arm statute broadly explains that "the causing of any injury within this state whether tortious or by breach of warranty" is sufficient.[66]  Clearly, System's allegations suffice to establish this point as well.

## CONCLUSION

The court DENIES defendant's motion to dismiss for lack of personal jurisdiction (# 9–1).  SO ORDERED.